WHITE MOTOR CORPORATION, APPELLANT, *v.* WHITE
CONSOLIDATED INDUSTRIES, INCORPORATED, APPELLEE.

[Cite as White Motor Corp. v. White Industries (1978),
60 Ohio App. 2d 82.]

(No. 39295—Decided September 6, 1978.)

*Mr. Richard F. Stevens, Mr. H. Stephen Madsen, Mr.*
*Wayne C. Dabb, Jr., Mr. Mark I. Wallach,* and *Messrs.*
*Baker, Hostetler & Patterson,* for appellant.

*Mr. Leigh S. Trevor, Messrs. Jones, Day, Reavis &*
*Pogue,* and *Messrs. Spangenberg, Shibley, Traci & Lancione,*
for appellee.

PARRINO, P. J. White Motor brings this appeal from the
trial court's denial of its motion to disqualify White Con-
solidated's counsel, Jones, Day, Reavis & Pogue, in an action
for breach of contract brought by White Motor against White
Consolidated. This cause, which is apparently a case of first
impression in Ohio courts, is before us on White Con-
solidated's motion to dismiss the appeal on the ground that
the overruling of a motion to disqualify counsel is not a final
appealable order within the meaning of R. C. 2505.02.

In November and December, 1975, officers of appellant
White Motor Corporation and appellee White Consolidated
Industries, Inc., entered into negotiations with respect to a
merger of the two corporations. The product of the discus-
sions between the parties was an Agreement and Plan of
Merger dated December 16, 1975 wherein the parties agreed
that White Motor was to become a subsidiary of White Con-
solidated.

During the course of the merger negotiations, White
Motor was represented principally by the law firm of Hughes,

Hubbard & Reed, New York, New York. White Consolidated was represented principally by the law firm of Jones, Day, Reavis & Pogue, Cleveland, Ohio.

In order to present a united position to the Anti-trust Division of the United States Department of Justice on anti-trust matters relating to the merger, White Motor and White Consolidated jointly retained the services of Jones, Day, Reavis & Pogue. The efforts of Jones, Day, Reavis & Pogue were successful. The Department of Justice elected not to interfere with the proposed merger.

On May 3, 1976, White Consolidated terminated its participation in the Agreement and Plan of Merger. The merger between White Motor and White Consolidated was never consumated.

On June 4, 1976, White Motor filed a "Complaint for Money Only" wherein it alleged that White Consolidated's breach of the merger agreement had damaged it in the amount of $30,000,000.

White Motor's complaint was answered on June 28, 1976, by White Consolidated through its attorneys, Craig Spangenberg and Norman W. Shibley of the firm Spangenberg, Shibley, Tracy & Lancione. However, the name of Jones, Day, Reavis & Pogue later appeared in the pleadings, "Of Counsel," on November 1, 1976. The participation of Jones, Day, Reavis & Pogue on the side of White Consolidated in the breach of contract litigation thereafter is readily apparent from the record.

On September 30, 1977, White Motor moved to disqualify Jones, Day, Reavis & Pogue as counsel for White Consolidated on the following grounds:

"1. Jones, Day engaged in significant prior representation of [White] Motor on matters that not only bear a substantial relation to, but indeed form part of the basis of, the transaction which is the subject of this action;

"2. [White] Motor's permission for Jones, Day to act as counsel for WCI [White Consolidated Industries] in this case was never sought nor received;

"3. continued representation of WCI [White Consolidated Industries] by Jones, Day is a violation of its fiduciary duty to [White] Motor;

"4. such representation of WCI [White Consolidated Industries] in this litigation creates an appearance of impropriety; and

"5. members and associates of Jones, Day were active participants in the activities and the transaction which is the subject of this action and will probably be called to testify in this action, all in violation of the ABA Code of Professional Responsibility, the Ethical Considerations and Disciplinary Rules thereunder as adopted by the Ohio Supreme Court."

On March 23, 1978, after holding a hearing on White Motor's motion to disqualify, the court overruled the motion. White Motor filed its notice of appeal from this ruling of the trial court. White Consolidated moved to dismiss the appeal on grounds that a motion to disqualify is not a final appealable order.

We hold that the overruling of a motion to disqualify counsel is a final appealable order within the meaning of R. C. 2505.02 because it is an order affecting a substantial right made in a special proceeding.[1]

In the instant cause, White Motor asserted that Jones, Day, Reavis & Pogue has represented White Motor in the past and continues to represent White Motor on other pending cases.[2] Further, White Motor alleges that attorneys from Jones, Day, Reavis & Pogue will be called, or ought to be called, as witnesses in the breach of contract action.

The first issue to be determined is whether the motion to

---

[1] R. C. 2505.02 provides in part:

"An order affecting a substantial right in an action which in effect determines the action and prevents a judgment, an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order vacating or setting aside a judgment and ordering a new trial is a final order which may be reviewed, affirmed, modified, or reversed, with or without retrial.***"

It is apparent that none of the other provisions of the statute are applicable to these proceedings. The order was not made after judgment. Nor does it affect a "substantial right in an action which in effect determines the action"; the court's order of March 23, 1978 does not prevent a judgment in the breach of contract action between White Motor and White Consolidated.

[2] However, such other pending cases are not related to the merger negotiations between White Motor and White Consolidated or to White Motor's breach of contract action.

disqualify sufficiently alleges the existence of a violation of a "substantial right" as required by R. C. 2505.02.

As used in R. C. 2505.02 a "substantial right" is a legal right which is enforced and protected by law. *Armstrong* v. *Herancourt Brewing Co.* (1895), 53 Ohio St. 467; *Union Camp Corp.* v. *Whitman* (1978), 54 Ohio St. 2d 159. The thrust of Gov. R. IV (1) and the Code of Professional Responsibility is that the parties to a lawsuit have the legal right to expect that their present and former lawyers will adhere to the precepts of conduct embodied in the Code. Rule IV (1) of the Supreme Court Rules for the Government of the Bar of Ohio provides in part that the Code of Professional Responsibility "shall be binding upon all persons admitted to practice law in the State of Ohio***." Canons 5 and 9 of the Code of Professional Responsibility, as adopted by the Supreme Court of Ohio on October 5, 1970, and as set forth in 23 Ohio St. 2d, require a lawyer to exercise independent judgment on behalf of the client and avoid the appearance of professional impropriety. Canons 5 and 9 provide:

"Disciplinary Rule 5-101.

"REFUSING EMPLOYMENT WHEN THE IN-TERESTS OF THE LAWYER MAY IMPAIR HIS IN-DEPENDENT PROFESSIONAL JUDGMENT.

"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

"Disciplinary Rule 5-102.

"WITHDRAWAL AS COUNSEL WHEN THE LAWYER BECOMES A WITNESS.

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in this firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101 (B) (1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

"Ethical Consideration 5-1.

"The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client."

"Ethical Consideration 5-14.

"Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant."

"Ethical Consideration 5-20.

"A lawyer is often asked to serve as an impartial arbitrator or mediator in matters which involve present or former clients. He may serve in either capacity if he first discloses such present or former relationships. After a lawyer has undertaken to act as an impartial arbitrator or mediator,

he should not thereafter represent in the dispute any of the parties involved."

"Ethical Consideration 9-1.

"Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession."

Guidance as to the meaning and implications of the above provisions of Canons 5 and 9 can be gained from an examination of federal cases which have construed the analogous sections of the American Bar Association's Code of Professional Responsibility.

An attorney may not accept employment against a *former* client where there is a "substantial relationship" between the existing controversy and the prior representation. *Cinema 5, Ltd.* v. *Cinerama, Inc.* (C.A. 2., 1976), 528 F. 2d 1384; *International Electronics Corp.* v. *Flanzer* (C.A. 2., 1975), 527 F. 2d 1288 and *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.* (C.A. 2., 1975), 518 F. 2d 751. Where the attorney-client relationship is an *existing* one, the propriety of the law firm's conduct "must be measured not so much against the similarities in litigation, as against the duty of loyalty which an attorney owes to each of his clients. A lawyer's duty to his client is that of a fiduciary or trustee." *Cinema 5, Ltd.* v. *Cinerama, Inc. supra* at 1386.

The court in *Cinema 5, Ltd.* v. *Cinerama, Inc., supra* at 1386-1387, continued to emphasize the attorney's duty of loyalty to an existing client as follows:

"Under the Code, the lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed. Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned. * * *

"* * *[I]n *Grievance Committee* v. *Rottner, supra,* 152 Conn. at 65, 203 A. 2d 82, Connecticut's highest court held that the maintenance of public confidence in the bar requires an attorney to decline employment adverse to his client, even

though the nature of such employment is wholly unrelated to that of his existing representation.

"Whether such adverse representation, without more, requires disqualification in every case, is a matter we need not now decide. We do hold, however, that the 'substantial relationship' test does not set a sufficiently high standard by which the necessity for disqualification should be determined. That test may properly be applied only where the representation of a former client has been terminated and the parameters of such relationship have been fixed. Where the relationship is a continuing one, adverse representation is prima facie improper, *Matter of Kelly* [(1968), 23 N. Y. 2d 368, 376, 296 N.Y.S. 2d 937], and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." (Emphasis supplied.) *Accord, Fund of Funds, Ltd.* v. *Arthur Anderson & Co.* (C. A. 2, 1977), 567 F. 2d 225.

With regard to the claim of White Motor that members of Jones, Day, Reavis & Pogue ought to be called as witnesses, it was held in *J. P. Foley & Co.* v. *Vanderbilt* (C. A. 2. 1975), 523 F. 2d 1357, that counsel should have been disqualified under Disciplinary Rule 5-102 (A) when it appeared that counsel *ought* to have been called as witnesses by one of the parties to the lawsuit. *Cf. Kroungold* v. *Triester* (C.A. 3. 1975), 521 F. 2d 763.

Based on our review of the Code of Professional Responsibility, Gov. R. IV (1), and the relevant federal cases, we hold that appellant White Motor has sufficiently alleged the existence of a violation of a "substantial right" to satisfy the requirements of R. C. 2505.02.

The second aspect of our determination is whether a motion to disqualify counsel is a "special proceeding."

Courts of this state traditionally have been reluctant to find that a cause is a "special proceeding." *State* v. *Collins* (1970), 24 Ohio St. 2d 107, 108. However, modern courts will not anchor the definition of a "special proceeding" to its ancient origins: and, "modern exigency must not be left unattended solely on the basis of academic genealogy." *Id.* at 109. See also, *Union Camp Corp.* v. *Whitman* (1978), 54 Ohio St. 2d 159. In the case of *In re Estate of Wyckoff* (1957), 166 Ohio

St. 354, the Supreme Court, citing *Missionary Society* v. *Ely* (1897), 56 Ohio St. 405, noted at page 357:

" '\*\*\*[W]e suppose that ordinary proceeding in a court of justice, by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense, involving the process and pleadings, and ending in a judgment, is an action, *while every proceeding other than an action,* where a remedy is sought by an original application to a court for a judgment or an order, *is a special proceeding.*' " (Emphasis supplied.)

The application of the liberalized definition of the term "special proceeding," as found in *In re Estate of Wyckoff, supra, State* v. *Collins, supra,* and *Union Camp Corp.* v. *Whitman, supra,* to the present appeal is justified because it promotes the efficient administration of justice and serves the public policy embodied in the Canons of Ethics.

These policy considerations have been announced by several federal courts. A majority of federal appellate courts have found the granting or denial of a motion to disqualify counsel to be a final appealable order; and, although federal jurisdiction has no analogue to the "special proceeding" language of R. C. 2505.02, the policy rationale relied upon by the federal courts is persuasive.

In *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.* (C.A. 2. 1974), 496 F. 2d 800, 802 *(en banc),* The Second Circuit, citing *Cohen* v. *Beneficial Industrial Loan Corp.* (1949), 337 U. S. 541, 546-547, characterized a motion to disqualify counsel as:

" '\*\*\*too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.\*\*\*' "

*Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp., supra,* which is the guiding decision in this area of federal jurisprudence, notes at 496 F. 2d 805 that an order refusing to disqualify counsel,

"\*\*\*is collateral to the main proceeding yet has grave consequences to the losing party, and it is fatuous to suppose that review of the final judgment will provide adequate relief."

Thus, providing for an appeal on the issue of disqualifica-

tion of counsel may effect a savings of judicial time in that a cause, otherwise properly tried below, need not be retried should an appellate court determine that the failure to disqualify counsel was reversible error.

Finally, the public's right to expect that lawyers act ethically is given great weight by us in rendering this decision. The maintenance of public confidence in the bar requires "an attorney to decline employment adverse to his client, even though the nature of such employment is wholly unrelated to that of his existing representation." *Cinema 5, Ltd.* v. *Cinerama, Inc., supra* at 1386-1387. A client's trust and confidence in the continuing loyalty of his lawyer will be fostered by preventing an attorney from filing a suit against an existing client on another matter.

Without intimating an opinion on the merits of this appeal based on the unusual facts found in this record, we hold that an order denying a motion to disqualify counsel is a final appealable order [3] within the meaning of R. C. 2505.02.

For all of the above reasons, White Consolidated's Motion to Dismiss the appeal of White Motor is overruled.

*Motion overruled.*

JACKSON and PATTON, JJ., concur.

---

[3] We note that White Motor's motion to disqualify is not a "claim, counterclaim, cross-claim or third-party claim" within the meaning of Civil Rule 54 (B). Therefore, Civil Rule 54 (B) presents no jurisdictional bar to our decision in this cause.