VINCI et al., Appellees,

v.

CERAOLO, Appellant.

[Cite as *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 60100, 61000, 61001.

Decided April 27, 1992.

642

*Jon R. Burney*, for appellees.
*Robert G. Miller*, for appellant.

---

JOHN F. CORRIGAN, Judge.

Appellant, Ross Ceraolo, appeals from the order of the trial court granting judgment in favor of appellees, Rida Vinci and 1540 Columbus Corp., and ordering appellant to pay punitive damages, attorney fees, and costs. For the reasons set forth below, we affirm.

I

Appellee Rida Vinci commenced this action for replevin of a 1987 Cadillac on May 23, 1989. This case was designated case No. 170039. On June 14, 1989, appellee 1540 Columbus Corp. filed a complaint against appellant seeking a money judgment, an accounting, a temporary restraining order, a temporary injunction, and a permanent injunction. This case was designated case No. 171308.

On June 20, 1989, appellant filed an answer and extensive counterclaim in case No. 170039, naming 1540 Columbus Corp. as a new-party plaintiff.

Appellant's counterclaim alleged that he owned one half of the outstanding shares of 1540 Columbus Corp. and requested an injunction against Vinci, dissolution of the corporation and $100,000 as repayment for alleged loans made to both appellees. On July 7, 1989, appellant filed an answer and general denial in case No. 171308.

Pursuant to motion by appellant and Civ.R. 42, these cases were consolidated before the Honorable Burt W. Griffin.

On April 26, 1990, approximately one month prior to the scheduled trial, appellant moved to disqualify appellees' attorney, Jon R. Burney. The trial court denied that motion and the matter proceeded to bench trial on May 29, 1990.

At trial, appellees presented the testimony of a handwriting expert, Vickie Willard, who testified that Rida Vinci's signature had been forged on certain crucial documents that allegedly created appellant's ownership interest in 1540 Columbus Corp. Appellant presented the testimony of his own expert, Ann Jelson, who testified that these crucial signatures were not forged. Jelson based her testimony on the assumption that certain comparison writings were those of Vinci. This assumption was partially discredited by appellees on cross-examination.

Subsequently, appellant attempted to qualify Francois Aurelius McKanze as a handwriting expert. McKanze's testimony revealed that his only formal training in determining the genuineness of signatures was in the military in 1965. He further testified that he made only preliminary findings for the military, and documents he deemed suspicious were sent to experts to evaluate. McKanze further revealed that his only current certification is in graphoanalysis from the International Society of Question Document Examiners. Finally, McKanze was unable to identify any court proceeding in which he was allowed to testify as an expert. The trial court refused to allow McKanze to testify as an expert on behalf of appellant.

In addition to excluding McKanze's testimony, the trial court excluded that of Hal Pollock, Esq. Pollock represented appellees prior to the commencement of these lawsuits. Appellant called Pollack to the witness stand; however, appellees' objected, stating that Pollack was a surprise witness not disclosed pursuant to discovery requests. The trial court sustained appellees' objection on those grounds.

Because the trial court's findings of fraud and forgery were not assigned as error, the analysis of the facts set forth at trial has been limited to the substantive and procedural errors raised on appeal.

At the close of the case, the trial court granted judgment in favor of appellees on all counts of their complaints and on all counts of appellant's counterclaim. Specifically, the court ordered a replevin in case No. 170039. In case No. 171308, the court found that the documents that demonstrated appellant's ownership interest in 1540 Columbus Corp. were forgeries, there was no evidence indicating that appellees owed appellant any money, an injunction against appellant was proper to enjoin him from claiming an ownership interest in the corporation, and finally that Rida Vinci is the sole owner of the corporation's one hundred shares of stock. Further, the court found that the forgeries were deliberate and malicious, and granted appellees $7,500 in punitive damages. The court then asked both parties to submit briefs on the amount of compensatory damages to be awarded. Appellant filed a timely appeal of this judgment, which has been designated by this court as case No. 60100.

On November 8, 1990, the trial court held a hearing to determine the amount of compensatory damages to be awarded. Appellees presented documentation and expert testimony indicating that they had incurred $38,391.75 in legal fees and $4,221.49 in expenses in both cases. Appellant cross-examined appellees' expert, but put forth no evidence to refute appellees' claims.

Thereafter, the trial court granted appellees damages in the amount of $35,741.75, attorney fees, which amount did not include fees for the replevin action, and $3,921.49 expenses, which amount also did not include expenses in the replevin action. The judgment included interest at the statutory rate from June 6, 1990. Appellant filed a timely appeal of this judgment, which has been designated by this court as case No. 61000.

Case Nos. 60100 and 61000 are consolidated before this court for purposes of briefing, hearing and disposition.

## II

For his first assignment of error in case No. 60100, appellant contends that:

"The lower court erred in not permitting the appellant's handwriting expert to testify at the trial of this matter."

Appellant called Francois Aurelius McKanze to the stand as an expert to identify whether certain signatures of Rida Vinci were authentic. The trial court, after a preliminary evaluation of McKanze's credentials, ruled that McKanze could not testify as an expert.

While Evid.R. 702 permits expert testimony, a threshold determination must first be made under Evid.R. 104(A) concerning the qualification of

an individual to testify as an expert witness. *Kitchens v. McKay* (1987), 38 Ohio App.3d 165, 168–169, 528 N.E.2d 603, 605–607. On appeal, the trial court's ruling with respect to a witness's qualifications as an expert will not ordinarily be reversed unless there is a clear showing that the court abused its discretion. *Id.* at 169, 528 N.E.2d at 606; *Fulton v. Aszman* (1982), 4 Ohio App.3d 64, 4 OBR 114, 446 N.E.2d 803. The term "abuse of discretion," however, connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855.

We find that sufficient facts were demonstrated on the record to prove that the ruling of the trial court in excluding the testimony of McKanze was not unreasonable, arbitrary or unconscionable. The record plainly demonstrates that while McKanze received some training in preliminary document analysis and graphoanalysis, he has little, if any, formal training in examining forged signatures. In fact, when questioned by the trial judge, McKanze admitted that graphoanalysis does not involve determining whether a person's signature is genuine or not. Further, his only professional certification does not indicate an expertise in this field. Finally, McKanze was unable to identify any legal proceeding in which he has been permitted to testify as an expert.

Based upon the foregoing, we find that appellant's first assignment of error is not well taken.

### III

For his second assignment of error in case No. 60100, appellant contends that:

"The lower court erred in not permitting attorney Hal Pollock to testify on behalf of the appellant at the trial of this matter."

Appellant attempted to call Hal Pollock to the stand on direct examination. Pollock represented appellees as private counsel prior to the inception of this litigation. Pollock's name was not on a list of witnesses furnished by appellant pursuant to appellees' discovery request. The trial court refused to allow Pollock's testimony on the basis of the discovery violation.

The trial court has broad discretion in guiding discovery, and absent an abuse of that discretion, an appellate court should not overturn the court's rulings on discovery matters. See *Doe v. Univ. of Cincinnati* (1988), 42 Ohio App.3d 227, 538 N.E.2d 419.

Civ.R. 26(E) provides that parties must supplement discovery with the names of expert witnesses when they become available. Civ.R. 26(E)(3) provides that a duty to supplement all responses may be imposed by order of the court or through requests for supplementation by the parties. More specifically, however, as to non-expert trial witnesses, Loc.R. 21.1(II) of the Court of Common Pleas of Cuyahoga County, General Division, provides that:

"All parties are required to submit a trial witness list, including the full name and address of all witnesses expected to testify at the trial on their behalf, no later than seven (7) days prior to the final pretrial date. Thereafter, upon a showing of good cause, the opposing party may take the discovery deposition of any witness contained on the opposing trial witness list who has not been previously deposed during the normal discovery period. This extension of discovery cutoff is specifically restricted to depositions not previously taken of individuals listed on the opponent's trial witness list."

Based upon the foregoing rules of court, we find that appellant was under a duty to disclose the name of Pollock as a potential witness, and his failure to do so was a discovery violation sanctionable by the exclusion of that witness's testimony. Therefore, we find that the trial court did not abuse its discretion in this matter and appellant's second assignment of error is not well taken.

## IV

For his third assignment of error in case No. 60100, appellant contends that:

"The lower court erred in denying the appellant's motion to disqualify attorney Jon R. Burney as counsel for appellees."

In reviewing a motion to disqualify counsel, a court must balance the "doctrine of protecting the confidentiality of the attorney-client relationship versus interfering with an individual's freedom to retain counsel of his choice." *Worth v. Huntington Bancshares, Inc.* (Nov. 25, 1987), Cuyahoga App. No. 52861, unreported, at 57–58, 1987 WL 25694, affirmed in part and reversed in part on other grounds (1989), 43 Ohio St.3d 192, 540 N.E.2d 249.

The standard for disqualification of counsel is as follows:

"[A]n attorney may not represent a client in litigation against a former client if the former and current representations are both 'adverse' and 'substantially related.'

"*In re Dayco Corporation* (S.D.Ohio 1984), 102 Fed.R.Dec. 624, 628; see, also, *White Mtr. Corp. [v. White Consol. Indus., Inc.* (1978)], *supra* [60 Ohio App.2d 82 at 86, 14 O.O.3d 64] at 67 [395 N.E.2d 1340 at 1344]; *Phillips v. Investors Diversified* (S.D.N.Y.1976), 426 F.Supp. 208, 211. The foregoing test 'fulfills the purpose of enforcing the lawyer's duty of absolute fidelity

and guarding against the danger of inadvertent use of confidential information.' *Phillips, supra,* at 211." *Worth, supra,* at 59.

Burney's clients, Rida Vinci and 1540 Columbus Corp., are plaintiffs in the actions before us. Appellant contends that he is also Burney's client because of his alleged shares in 1540 Columbus Corp. This fact was not established prior to the court's ruling on the motion to disqualify. Therefore, there was no basis to exclude Burney from the case on that ground.

■ In its ruling on May 16, 1990, the court held that:

"Inasmuch as it has been represented by plaintiff's counsel that he will not be a witness for his clients in the present case, the motion to disqualify is denied."

DR 5–102 of the Code of Professional Responsibility provides:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness *on behalf of his client,* he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness *other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."* (Emphasis added.)

Subsection (A) is not applicable to this action because Burney informed the court that he would not testify on behalf of the appellants.

■ Under subsection (B), nothing has been presented in the record that indicates that Burney's testimony would be prejudicial to his clients. On the contrary, he could only bolster their case. Merely by acting as counsel for appellees and asserting their cause, Burney implicitly denies that appellant was a shareholder of 1540 Columbus Corp. The only way that appellant could be Burney's client in this case is as a shareholder of that corporation. Therefore, Burney could not have prejudiced appellant within the purview of the Code of Professional Responsibility.

Appellant's third assignment of error is not well taken.

V

■ Appellant's fourth and fifth assignments of error in case No. 60100 share a common basis in law and fact and will be dealt with simultaneously. For these assignments of error appellant contends that:

"The lower court erred in granting the appellees a judgment for punitive damages against the appellant."

"The lower court erred in granting the appellees a judgment for attorney's fees against the appellant."

Appellant argues that the award of attorney fees was erroneous because such damages were not pled, and are only appropriate in cases where punitive damages are appropriate. Appellant further argues that punitive damages are not appropriate because such damages were not pled, and are not proper in the absence of an award for actual damages.

Our review of these matters is limited to a determination of whether the trial court abused its discretion in making such awards. We find that appellees properly prayed for both compensatory and punitive damages. We further find that the trial court awarded attorney fees as compensatory damages.

■ Attorney fees are not recoverable by the prevailing party absent a statute providing for such an award. See *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. See, also, *Shimman v. Internatl. Union of Operating Engineers* (C.A. 6, 1984), 744 F.2d 1226. " * * * As a general rule, the costs and expenses of litigation, other than the usual court costs, are not recoverable in actions for damages, and ordinarily no attorney fees are allowed. * * * " *Gustafson v. Cotco Enter.* (1974), 42 Ohio App.2d 45, 52, 71 O.O.2d 264, 269, 328 N.E.2d 409, 414. This rule is often called the "American rule" and is followed in Ohio. See *Sorin, supra,* 46 Ohio St.2d at 179, 75 O.O.2d at 225, 347 N.E.2d at 529.

■ The exception to this rule arises when the opposing party has acted in bad faith. See *Shimman, supra,* 744 F.2d at 1229. If bad faith is found, attorney fees may be awarded. See *Gates v. Toledo* (1897), 57 Ohio St. 105, 48 N.E. 500. When there is bad faith or malicious misconduct, " * * * the jury may, in their estimate of *compensatory* damages, take into consideration and include reasonable fees of counsel employed by the plaintiff in the prosecution of his action." *Roberts v. Mason* (1859), 10 Ohio St. 277. Attorney fees are recoverable as *compensatory* damages by a plaintiff in an action in which punitive damages are proper. *Kapcsos v. Hammond* (1983), 13 Ohio App.3d 140, 13 OBR 173, 468 N.E.2d 325; *Langhorst v. Riethmiller* (1977), 52 Ohio App.2d 137, 6 O.O.3d 101, 368 N.E.2d 328.

It is well established that punitive damages are awardable in cases of fraud which involve malicious and intentional conduct. *Locafrance United States Corp. v. Interstate Distrib. Serv., Inc.* (1983), 6 Ohio St.3d 198, 6 OBR 252, 451 N.E.2d 1222. "Since punitive damages are assessed for punishment and

not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1176.

In the case *sub judice*, appellees presented ample evidence that the documents which purported to give appellant an ownership interest in 1540 Columbus Corp. were deliberate forgeries. The trial court properly found this action on the part of appellant to be malicious. The court also granted replevin and an injunction in favor of appellees. This being the case, it was entirely proper for the trial court to award punitive damages. Further, sufficient evidence was presented to demonstrate bad faith on the part of appellant in pursuance of this action. Therefore, based upon the foregoing, an award of reasonable attorney fees as compensatory damages is appropriate and the trial court did not abuse its discretion in so ruling.

Appellant's fourth and fifth assignments of error are not well taken.

## VI

For this first assignment of error in case No. 61000, appellant contends that:

"The lower court abused its discretion in the amount of attorney fees awarded the appellee because there was insufficient evidence to support such award."

Appellees' supported their claim for attorney fees with detailed documentation of each hour spent on this case, and with expert testimony. Appellees' expert testified that the fees represented by the hourly statement were reasonable both as to the hourly rate and amount of time spent on each item. Appellant's cross-examination of this witness failed to refute his testimony. Appellant did not present expert testimony in support of his case.

We find that sufficient evidence was presented to the trial court upon which a proper determination of attorney fees could be made. In addition, the transcript of the November 8, 1990 hearing reveals that the trial court followed the guidelines set forth in DR 2–106(B) of the Code of Professional Responsibility for determining the reasonableness of attorney fees.

Appellant's first assignment of error is not well taken.

## VII

For his second assignment of error in case No. 61000, appellant contends that:

"The lower court erred in awarding the appellee[s] litigation costs other than attorney's fees."

██ The trial court awarded appellees $3,921.49 in costs for court reporters, depositions and expert witness fees. Appellant specifically argues that the cost of taking and transcribing depositions, and expert witness fees are not recoverable.

Civ.R. 54(D) provides:

"(D) Costs. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."

Pursuant to this rule, the trial court had discretion as to how the cost of an action shall be assessed. *State ex rel. Fant v. Regional Transit Auth.* (1990), 48 Ohio St.3d 39, 548 N.E.2d 240.

██ In *Jones v. Pierson* (1981), 2 Ohio App.3d 447, 2 OBR 542, 442 N.E.2d 791, and more recently in *Guardado v. Newton Buying Corp.* (Dec. 13, 1990), Cuyahoga App. No. 57798, unreported, 1990 WL 204110, we set forth a two-step analysis for determining whether an expense is allowed as a taxable cost pursuant to Civ.R. 54(D).

██ First, the court must determine whether an expense is a taxable litigation expense or a personal expense. "Personal expenses" are those expenses accrued by a party in preparing the case for trial, whereas necessary expenses are those funds expended which are necessary and vital to the litigation. *Id.*

██ Second, the court must decide whether a proper litigation expense should be taxed as a cost. The court should not tax litigation expenses against a nonprevailing party when it would be inequitable to do so because of the conduct of the prevailing party.

With regard to appellees' deposition costs, we cannot, upon our review, state that they were not vital and necessary to appellees' case. The record reveals that each deponent appeared as a witness at trial and was vigorously cross-examined. In fact, through cross-examination, appellees' counsel completely discredited McKanze as an expert witness in this case. Furthermore, there is no showing that it would be inequitable, in light of any conduct on appellees' part, to assess such expenses as costs.

██ With regard to the expert witness fees, appellant relies on *Gold v. Orr Felt Co.* (1985), 21 Ohio App.3d 214, 21 OBR 228, 487 N.E.2d 347, for the proposition that such fees are not taxable as costs. The *Gold* case concerns only the cost of presenting a videotaped expert witness at trial pursuant to

C.P.Sup.R. 12(D), and is therefore not authoritative on the issues *sub judice*. Our analysis, therefore, is limited to a determination of whether the trial court abused its discretion in taxing those fees as costs. *Jones, supra.* We find that the cost of employing a handwriting expert in the case *sub judice* was necessary and vital to the litigation, and the fee amount was reasonable in all regards.

For these reasons, we find that the trial court did not abuse its discretion in awarding appellees $3,921.49 in costs.

Appellant's second assignment of error is not well taken.

*Judgment affirmed.*

MATIA, C.J., concurs.

KRUPANSKY, J., concurs in part and dissents in part.

KRUPANSKY, Judge, concurring and dissenting.

I concur in the majority's disposition of the first three assignments of error in case No. 60100, however, I respectfully dissent from the majority opinion with regard to the fourth and fifth assignments of error in case No. 60100 and both assignments of error in case No. 61000, as these all have merit.

In case No. 60100, appellant's fourth assignment of error challenges the trial court's award of punitive damages. Appellant contends that since the trial court made no award of compensatory damages, an award of punitive damages was improper. Appellant's argument is persuasive: in overruling this assignment of error, the majority opinion completely overlooks *stare decisis*.

In the case *sub judice*, although appellees prayed for compensatory damages, the trial court specifically made the following finding:

"This Court further finds that there was no credible evidence presented that establishes that there is money owing from either party to the other and therefore Defendant's claim of loans to Plaintiffs under Defendant's counterclaim in Case No. 170039 should be dismissed as well as Plaintiffs' claims for an accounting of funds under Counts III and IV of it's [*sic*] Complaint in case No. 171308 should also be dismissed."

The trial court then entered the following judgment:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of the Plaintiff 1540 Columbus Corp. under Case No. 171308 as follows:

"1.  As to Count I, Plaintiff 1540 Columbus Corp. is granted a permanent injunction against Defendant Ross Ceraolo restraining him from holding

himself out to others in any manner as an agent, officer, director or owner of Plaintiff 1540 Columbus Corp.

"2. Judgment is rendered in favor of the Plaintiff 1540 Columbus Corp. under Count II of the Complaint in Case No. 171308 for punitive damages in the amount of Seven Thousand Five Hundred Dollars ($7,500.00) and additional damages in reasonable attorney's fees, the amount of which shall be submitted by counsel for Plaintiff and ruled on by this Court by supplemental entry."

As can be seen from the foregoing judgment entry, the trial court found appellees had sustained *no actual damages.* The Supreme Court of Ohio has expressly stated that punitive damages may not be awarded in the absence of proof of actual damages. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704. In the case of *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, cited by the majority in the case *sub judice* in support of an award of punitive damages, the jury first made an award of *compensatory* damages. Therefore, that case is not applicable to the facts herein.

Furthermore, in *Bishop,* the Supreme Court specifically stated as follows:

"Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this state may be maintained simply for punitive damages." (Citation omitted.) *Id.,* 20 Ohio St.3d at 28, 20 OBR at 214, 485 N.E.2d at 705.

Thus, it has long been the practice and the requirement for the trier of fact to separately state compensatory damages and punitive damages. In the case *sub judice,* appellee 1540 Columbus Corp. claimed actual damages as a result of appellant's actions and prayed for both compensatory and punitive damages. However, the trial court *found no evidence of actual damages.* It merely granted appellee's prayer for an injunction. It then awarded punitive damages to appellee. This was clearly improper under *Bishop, supra.*

Accordingly, appellant's fourth assignment of error should be sustained.

Appellant's fifth assignment of error in case No. 60100 and two assignments of error in case No. 61000 are interrelated as they all deal with aspects of the trial court's award of attorney fees and costs to appellees. The majority opinion states that none of these assignments of error has merit. Once again, I disagree.

The majority opinion in the case *sub judice,* although stating the general rule regarding an award of attorney fees, proceeds to arbitrarily determine that the trial court's award of attorney fees to appellee was an award of *compensatory* damages. This determination is made despite the fact that the complaint *does not make a request* for attorney fees. Moreover, the award

of attorney fees against appellant in the case *sub judice* was improper for the following reasons, *viz.*, (1) attorney fees are not recoverable where an award of punitive damages is not properly made, *Carr v. Charter Natl. Life Ins. Co.* (1986), 22 Ohio St.3d 11, 22 OBR 9, 488 N.E.2d 199; (2) attorney fees are not recoverable absent a statutory provision allowing attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith, *Buller v. Respicare, Inc.* (1987), 39 Ohio App.3d 17, 528 N.E.2d 1282; and (3) the fact that appellant "interposed a defense which was ultimately overruled does not, in and of itself, demonstrate bad faith." *State ex rel. Kabatek v. Stackhouse* (1983), 6 Ohio St.3d 55, 56, 6 OBR 73, 74, 451 N.E.2d 248, 249.

In *Columbus Finance, Inc. v. Howard* (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658, the Supreme Court stated the general rule thusly: "If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." However, this rule must be read in conjunction with *Bishop v. Grdina, supra.* Thus, since punitive damages were not properly awarded in the case *sub judice*, attorney fees were also not properly awarded. In fact, none of the cases relied upon by the majority can be cited for the proposition that attorney fees can be awarded without an award of compensatory *and* punitive damages.

Secondly, in the case *sub judice*, the trial court awarded punitive damages solely on the ground that "the stock certificates upon which defendant Ross Ceraolo relies to establish his claim of ownership in 1540 Columbus Corp. are in fact forgeries * * *."

The judgment entry of the trial court thus states as follows:

"Further, this Court finds that the acts of Ross Ceraolo in claiming ownership through forged stock certificates to 1540 Columbus Corp. were intentional and malicious and that punitive damages should be granted in favor of the Plaintiff 1540 Columbus Corp. in the Case No. 171308 in the amount of Seven Thousand Five Hundred dollars ($7,500.00) based on a penalty of Two Thousand Five Hundred Dollars ($2,500.00) for each stock certificate."

However, the trial court's determination to award punitive damages on this ground was improper, since appellees' complaint never alleged nor did appellees argue in the trial court that appellant committed forgery. Moreover, even if appellant did commit forgery, this court has expressly found that forgery does not amount to the kind of "egregious conduct" which absent a statutory provision justifies an award of attorney fees.

In *Patio Enclosures, Inc. v. Haire* (Apr. 11, 1985), Cuyahoga App. No. 48862, unreported, 1985 WL 7951, appellant assigned as error the trial court's refusal to grant an award of attorney fees in an action against its employee

who had forged customers' signatures on contracts. Responding to appellant's argument that an award of attorney fees was proper in such a case, this court stated the following:

"It is well-settled that the award of attorney fees is appropriate in two specific instances. The first, where statutorily authorized, is not applicable here. The other instance in which the award of attorney fees is authorized is in situations when punitive damages would be appropriate, *i.e.* the conduct is so egregious as to constitute fraud, malice, bad faith or wantonness. Cf. *Columbus Finance v. Howard* (1975), 42 Ohio St.2d 178 [71 O.O.2d 174, 327 N.E.2d 654]; *Village of Oakwood v. Makar* (1983), 11 Ohio App.3d 46 [11 OBR 79, 463 N.E.2d 61].

"Appellant's reliance on *Locafrance United States Corp. v. Interstate Dist. Serv., Inc.* (1983), 6 Ohio St.3d 198 [6 OBR 252, 451 N.E.2d 1222], is misplaced. Appellant maintains that that case authorized the award of attorney fees where the conduct was willful, intentional and deliberate. There, the Supreme Court cited *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 138 [24 O.O.3d 239, 241, 436 N.E.2d 208, 210], in which it stated that actual malice signifies, *inter alia,* intent, deliberation or a willful design *to do another injury.* There was no evidence presented here to show intent, deliberation or a willful design *to do injury* to Patio in defendant Haire's conduct.

"Additionally, the *Logsdon [v. Graham Ford Co.* (1978), 54 Ohio St.2d 336, 8 O.O.3d 349, 376 N.E.2d 1333] court's example of the kind of egregious fraud that would warrant punitive damages involved a jeweler who represented a watch as new although the purchaser had to return it five times in two months for repairs. Testimony of two experts revealed that the watch *case* was new but the working parts were at least 25 years old and beyond repair. Defendant Haire's insistence to his employer that the signatures were genuine cannot be equated with the example cited by the *Logsdon* court." (Emphasis in original.)

Finally, the court in *Buller v. Respicare, Inc.* (1987), 39 Ohio App.3d 17, 17, 528 N.E.2d 1282, 1283, made the following circumspect observation:

"In the facts before us, neither party has demonstrated that the other party acted so wantonly or maliciously as to warrant an award of attorney fees. Neither party has proven the requisite 'bad faith' to qualify as an exception to the 'American Rule.' Furthermore, if the general rule is to be modified, extended or otherwise changed, this must be accomplished by the Supreme Court. Likewise, if an additional exception is to be engrafted, it must be done by the Supreme Court, not an intermediate appellate court which is bound by Supreme Court decisions."

Therefore, the trial court erred in awarding attorney fees to appellees and appellant's fifth assignment of error in case No. 60100 should be sustained.

Furthermore, as appellant argues in his first assignment of error in case No. 61000, review of the record in the case *sub judice* also reveals the trial court did not have sufficient evidence pertaining to all the relevant factors which must be considered before making an award of attorney fees. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894. The only evidence regarding fees was counsel's itemized document and an attorney from counsel's office who stated he had *cursorily* reviewed the case file. There was no evidence concerning " 'novelty of issues raised, * * * necessary skill to pursue the course of action; * * * customary fees in the locality * * *; and experience, reputation and ability of counsel.' " *Yarber v. Cooper* (1988), 61 Ohio App.3d 609, 615, 573 N.E.2d 713, 717.

Appellant also assigned as error in case No. 61000 the trial court's award of other litigation costs to appellees. I agree that in this the trial court also erred, since, generally, deposition costs are expenses of litigation to be borne by the parties taking those depositions. *Barrett v. Singer Co.* (1979), 60 Ohio St.2d 7, 14 O.O.3d 122, 396 N.E.2d 218; *Rice v. Dudick Corrosion–Proof, Inc.* (1989), 57 Ohio App.3d 156, 567 N.E.2d 315. It has also been held "[a] party's expert witness' fee is not taxable as costs to be charged against the losing party." *Gold v. Orr Felt Co.* (1985), 21 Ohio App.3d 214, 21 OBR 228, 487 N.E.2d 347, syllabus.

In support of its finding to the contrary, the majority opinion cites *Guardado v. Newton Buying Corp.* (Dec. 13, 1990), Cuyahoga App. No. 57798, unreported, 1990 WL 204110, for the proposition that this award was within the trial court's discretion. However, in *Guardado*, the cost concerned the videotaped deposition of a witness crucial to the case who was *unavailable for trial.* That was not the situation in the case *sub judice*. *Guardado* is further distinguishable from the case *sub judice* since despite allowing the trial court the discretion to consider the deposition to be a taxable litigation expense, pursuant to local rule of superintendence applicable to videotape depositions, this court determined the prevailing party was required to bear a portion of the cost of the deposition. In the case *sub judice*, the trial court merely stated in its "Supplemental Judgment Entry" that in addition to attorney fees, appellees were entitled to

" * * * the incidental costs related to such fees and litigation consisting of Court Reporter fees, costs of depositions and expert testimony amounting to Three Thousand Nine Hundred and Twenty–One and 49/100 Dollars ($3,921.49), or a total of Thirty-nine Thousand Six Hundred Sixty–Three and

24/100 Dollars ($39,663.24), with the exception that such Judgment shall also include the filing fee of Plaintiff 1540 Columbus Corp. * * * "

A review of the record in the case *sub judice* thus clearly reveals the trial court's award of damages was an abuse of its discretion. Therefore, this case should not be affirmed in its entirety.

Accordingly, I would strike the award of punitive damages and attorney fees and enter final judgment for appellant based upon a finding that appellant's fourth and fifth assignments of error in case No. 60100 have merit. The trial court abused its discretion in the case *sub judice* and improperly awarded punitive damages and attorney fees contrary to the well-established law, completely ignoring the *stare decisis* governing these issues.

In case No. 61000 I would strike the award of attorney fees on the basis there was insufficient evidence to sustain the attorney fees awarded and enter final judgment on this issue for appellant. In addition, I would reverse and remand to the trial court for a redetermination of expenses based upon reasonableness and *stare decisis* since the trial court abused its discretion in making such an award.