OPINION
On June 9, 1993, defendant-appellant, Keith Oldham, was indicted on two counts of rape, two counts of aggravated burglary, two counts of felonious assault, and one count of aggravated robbery in violation of R.C. 2907.02(A)(2),2911.11(A)(3), 2903.11(A)(2), and 2911.01(A)(2). Counts One, Two, and Three of the indictment alleged that appellant had robbed and raped fourteen-year-old Jennifer Mathes in her home on the night of October 29, 1991. The remaining four counts of the indictment alleged that appellant had raped and severely beaten another woman, Kimala Hopewell, in her home on the morning of December 9, 1991. Appellant entered not guilty pleas to all of the charges and moved to sever Counts One, Two, and Three of the indictment pursuant to Crim.R. 14. The trial court granted appellant's motion for severance in an order dated February 28, 1994.
On September 20, 1994, the state filed a motion to rejoin all of the offenses for trial pursuant to Crim.R. 8(A). The trial court granted the state's motion in an order dated October 7, 1994. A bench trial was subsequently held in the Butler County Court of Common Pleas in September 1995.
The state presented numerous witnesses at trial. Jennifer Mathes testified that a man surreptitiously entered her home on the night of October 29, 1991 and overpowered her in her sleep. Mathes testified that the man hit her in the face, bound her hands and feet, and threatened to kill her with a knife if she resisted. Mathes testified that the man removed her underwear, performed cunnilingus, and then raped her vaginally. Mathes stated that she did not see her attacker's face because the man covered her head with a blanket, but that she "knew he was black"[1] because she saw his wrist and forearm at one point during the assault.
Mathes testified that the man eventually asked her whether there was any money in the house. Mathes told her attacker that there might be some money in her mother's bedroom. The man left Mathes' bedroom at that point and rummaged through her mother's bedroom. Several minutes later, the man returned to Mathes' bedroom and angrily accused her of lying because he had been unable to find any money in her mother's bedroom. Mathes told her attacker that there was a $10 bill in her jeans. The man threatened to kill Mathes if she told anyone about the attack and then left the house. The $10 bill Mathes had put in her jeans and a pair of Nike athletic shoes were subsequently found to be missing from Mathes' bedroom. Mathes later identified appellant's voice as that of her attacker in a voice line-up procedure police conducted at the Hamilton County Justice Center.
Kimala Hopewell testified that she was preparing for work at approximately 6:15 a.m. on December 9, 1991 when she was attacked by a man in the garage area of her home. Hopewell testified that she could not see the man's face because he was wearing a hooded jacket which was tightly drawn around his head, but that she knew he was African-American because she saw his forearm at one point during the attack. Hopewell testified that the man repeatedly beat her in the head with a broom handle, pulled her sweatshirt up over her head to further conceal his identity, and then threatened to kill her with a knife if she resisted.
Hopewell testified that the man dragged her outside into a neighbor's yard, removed the sweatpants she was wearing, and then raped her vaginally. Hopewell's attacker eventually fled when Fairfield Police arrived at the scene. Hopewell suffered a severe head wound as a result of the attack. Hopewell stated that police later found the contents of her purse strewn about in the yard area of her home and that $17 which she had previously put in her purse was missing.
Molecular biologist Paula Yates testified that she performed a "DNA profiling" analysis on semen police found on Jennifer Mathes' bed sheets the morning after the attack. Yates testified that she compared DNA contained in the semen with DNA extracted from a sample of appellant's blood. Yates testified that the "banding patterns" of the DNA taken from the semen matched that of the DNA extracted from appellant's blood. Yates also testified that the probability of another African-American having the same DNA banding pattern was approximately one in forty-seven billion.[2]
Microbiologist Charlotte Word testified that she reviewed the results of the DNA profiling analysis Yates had performed on the sample of appellant's blood and the semen found on Mathes' bed sheets. Word testified that, in her opinion, the banding patterns of the DNA found in the two genetic materials "matched." Word also testified that Yates had performed the DNA testing procedures in an accurate, error-free manner.
Forensic scientist John Quill testified that he performed a DNA profiling analysis on spermatozoa contained in vaginal swabbings which were taken from Kimala Hopewell at a nearby hospital immediately after the rape. Quill testified that he compared DNA contained in the spermatozoa with DNA he extracted from a sample of appellant's blood. Quill testified that the banding patterns of the DNA taken from the spermatozoa matched that of the DNA extracted from appellant's blood. Quill also stated that the probability of another African-American having the same DNA banding pattern was approximately one in three hundred fifty thousand.[3]
The trial court convicted appellant of rape, aggravated burglary, and aggravated robbery in connection with the attack on Jennifer Mathes. The trial court also convicted appellant of rape, aggravated burglary, and two counts of felonious assault for the attack on Kimala Hopewell. The trial court then merged appellant's convictions for felonious assault pursuant to R.C.2941.25 because the two crimes were allied offenses of similar import.
The trial court sentenced appellant to a ten to twenty-five year term of imprisonment for each rape, an eight to twenty-five year term of imprisonment for each aggravated burglary, an eight to twenty-five year term of imprisonment for the aggravated robbery, and an eight to twenty-five year term of imprisonment for felonious assault. The trial court ordered each of the sentences it imposed for the attack on Kimala Hopewell to be served consecutively to those it imposed for the attack on Jennifer Mathes. Appellant now appeals setting forth the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY GRANTING THE APPELLEE'S MOTION FOR JOINDER OF THE CHARGES IN THE INDICTMENT.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE BLOOD EVIDENCE OBTAINED FROM THE DEFENDANT.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY ADMITTING DNA TESTIMONY AND EVIDENCE.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT ENTERED A VERDICT OF GUILTY TO THE CHARGES OF THE INDICTMENT.
In his first assignment of error, appellant contends that the trial court erred in re-joining all seven counts of the indictment for trial. Crim.R. 8(A) governs the joinder of offenses for trial and provides as follows:
 Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
"Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." State v. Schaim (1992), 65 Ohio St.3d 51, 58. A defendant who asserts that joinder is improper bears the burden of making an affirmative showing that his rights will thereby be prejudiced. State v. Brooks (1989), 44 Ohio St.3d 185, 193; State v. Torres (1981),66 Ohio St.2d 340, 343.
Appellant argues that joinder of the offenses for trial was improper because "[t]he evidence presented for both occurrences was cumulative and prejudicial due to the sheer weight of all the evidence." The state may counter a defendant's claim that he was prejudiced by the joinder of multiple offenses for trial by satisfying the "other acts" test. State v. Franklin (1991),62 Ohio St.3d 118, 122; State v. Lott (1990), 51 Ohio St.3d 160,163.[4] The other acts test permits the state to negate a defendant's claim that he was prejudiced by the joinder of multiple offenses for trial by demonstrating that it could have introduced evidence of one offense in the trial of the other offense under the other acts portion of Evid.R. 404(B), even if the offenses had been severed for trial. Schaim at 59; State v. Van Sickle (1993), 90 Ohio App.3d 301, 305. If evidence of the joined offenses would have been admissible in separate proceedings, the other acts test presumes that "any prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials and a court need not inquire further." Schaim at 59; State v. Hackney (Aug. 30, 1993), Clermont App. No. CA92-12-118, unreported, at 6.
Evid.R. 404(B) governs the admissibility of other acts evidence and provides as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Other acts evidence may be introduced under Evid.R. 404(B) to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense. State v. Smith (1990), 49 Ohio St.3d 137, 141. Such modus operandi evidence is admissible not because it labels the defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. State v. Lowe (1994), 69 Ohio St.3d 527,531. "To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question." Id. See, also, State v. Jamison (1990), 49 Ohio St.3d 182, 185-87.
The record indicates that appellant committed both sexual assaults in this case in a strikingly similar manner. Appellant surreptitiously entered both victims' homes during the late night or early morning hours, overpowered both victims by striking them in the head, and then forcibly raped both victims. Appellant also attempted to conceal his identity by covering the face of both victims, threatened to kill both victims with a knife, and took money from both victims before fleeing the crime scene. Having carefully considered these facts, we are satisfied that evidence of each sexual assault committed by appellant would have been admissible in separate trials under Evid.R. 404(B). Therefore, appellant was not prejudiced by the joinder of the offenses arising out of both attacks for trial under Crim.R. 8(A). Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court should have suppressed the DNA evidence offered by the state because the search warrant which authorized police to take samples of his blood, hair, and saliva was issued in reliance upon an affidavit which contained false statements. Crim.R. 12 governs the time within which a defendant must file a motion to suppress evidence and provides, in pertinent part, as follows:
 (C) Motion date. All pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.
* * *
 (G) Effect of failure to raise defenses or objections. Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver.
The failure to move within the time specified by Crim.R. 12(C) for the suppression of evidence because of an illegal seizure constitutes a waiver of the error under Crim.R. 12(G). State v. Phillips (1995), 74 Ohio St.3d 72, 97. The record indicates that appellant did not file his motion to suppress evidence until more than two years after he was arraigned and just two days before the trial in this case began on September 25, 1995. Appellant consequently waived any alleged Fourth Amendment violation by failing to file his motion to suppress evidence in a timely manner. Therefore, the trial court did not err in overruling appellant's motion to suppress.
Apart from being procedurally defective, appellant's motion to suppress asserts that the warrant authorizing police to take samples of his blood, hair, and saliva for DNA testing was not supported by probable cause because the affidavit police used to obtain the warrant contained false statements. In Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674, the United States Supreme Court considered whether a defendant may attack the veracity of a warrant affidavit after the warrant has been issued and executed. The Court held that evidence seized pursuant to a search warrant which was issued in reliance upon a false affidavit must be suppressed unless "with the affidavit's false material set to one side, the affidavit's remaining content is [sufficient] to establish probable cause * * *." Id. at 156,98 S.Ct. at 2676. The Court set forth its analysis as follows:
 There is * * * a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. * * * [I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.
Id. at 171-72, 98 S.Ct. at 2684-85. See, also, State v. Waddy (1992), 63 Ohio St.3d 424, 441; State v. Roberts (1980), 62 Ohio St.2d 170,177-78.
Appellant claims that the search warrant affidavit falsely stated that Kimala Hopewell and Valerie Potter, another woman who appellant was convicted of raping in a separate trial, each identified their attackers as an African-American male. The record shows that appellant attached a police evidence submission sheet and other documentary evidence to his motion to suppress which arguably demonstrates that neither Hopewell nor Potter were able to determine the race of their attackers.[5] Applying the rule set forth in Franks, we must therefore determine whether the search warrant affidavit was sufficient to establish probable cause when these allegedly false statements are set aside.[6]
A magistrate's task in reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant "is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332; State v. George (1989), 45 Ohio St.3d 325, syllabus. An appellate court should not substitute its judgment for that of the magistrate by conducting a de novo review of whether the affidavit contains sufficient probable cause. State v. Brown (1995), 101 Ohio App.3d 227,230. "Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." George at syllabus; Brown at 230.
The search warrant affidavit in this case alleged that a series of similar rapes and aggravated burglaries had occurred in the adjoining communities of Fairfield and Forest Park, Ohio between October 29, 1991 and August 29, 1992. The affidavit also alleged that appellant's fingerprints had been found at one of the crime scenes and that police responding to a 9-1-1 emergency call in Forest Park had apprehended appellant hiding in some bushes near the scene of an attempted aggravated burglary. The affidavit further alleged that bodily fluids from the offender had been recovered in each of the rape cases and that DNA in these fluids could be compared to DNA contained in appellant's blood, hair, and saliva to determine whether appellant was the perpetrator of the offenses. Redacting the statements from the search warrant affidavit which appellant claims are false, we nevertheless believe that these facts conclusively establish probable cause to believe that samples of appellant's blood, hair, and saliva would yield evidence of a crime. Accordingly, the trial court properly overruled appellant's motion to suppress under the rule enunciated by the Supreme Court in Franks. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends that the trial court should have excluded all of the state's expert testimony because the DNA profiling analyses used to identify him as the perpetrator of the sexual assaults on Mathes and Hopewell were not sufficiently reliable. Evid.R. 702 governs the admissibility of expert testimony and provides, in pertinent part, as follows:
 A witness may testify as an expert if all of the following apply:
* * *
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
The admissibility of expert testimony under Evid.R. 702 is a matter within the sound discretion of the trial court. Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164. An appellate court must not disturb a trial court's decision to admit expert testimony under Evid.R. 702 unless there has been an abuse of discretion. State v. Williams (983), 4 Ohio St.3d 53, 58. "The term `abuse of discretion' * * * connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the trial court." Vinci v. Ceraolo (1992), 79 Ohio App.3d 640, 646.
All three of the state's expert witnesses, Yates, Word, and Quill, testified extensively concerning the widely-accepted and objectively verifiable theories of molecular biology and population genetics which form the basis of DNA profiling. Yates, Word, and Quill also collectively testified that the process of DNA profiling reliably implements these scientific theories and that the specific DNA testing procedures used to identify appellant as the perpetrator of the crimes against Mathes and Hopewell were conducted in an accurate, error-free manner. The trial court certainly did not abuse its discretion in finding that the threshold degree of reliability necessary to admit scientific evidence under by Evid.R. 702(C) was met in light of this testimony. Accordingly, the trial court did not err in permitting the state's expert witnesses to testify concerning the results of the DNA profiling analyses performed in this case. Appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant contends that his convictions are contrary to the manifest weight of the evidence. When determining whether a criminal conviction is supported by the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and then determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387; State v. Martin (1983), 20 Ohio App.3d 172, 175. The reviewing court is not required to view the evidence in the light most favorable to the prosecution, but should give deference to the decision reached by the trier of fact. Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring).
Our review of the record indicates that the state presented graphic and compelling testimony from both of the victims in this case, Mathes and Hopewell, as well as substantial, credible DNA evidence which conclusively identified appellant as the perpetrator of both attacks. The trial court did not lose its way or create a manifest miscarriage of justice in convicting appellant of the offenses charged in the indictment under these circumstances. Accordingly, we find that appellant's convictions for rape, aggravated burglary, aggravated robbery, and felonious assault are not contrary to the manifest weight of the evidence. Appellant's fourth assignment of error is overruled. The judgment of the trial court is affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] Appellant is an African-American.
[2] Yates also stated that the probability of a Caucasian having the same DNA banding pattern was approximately one in eighteen billion and that the probability of a Hispanic having the same DNA banding pattern was approximately one in 7.2 billion.
[3] Quill further testified that the probability of a Caucasian having the same DNA banding pattern was approximately one in nine hundred fifty thousand and that the probability of a Hispanic having the same DNA banding pattern was approximately one in seventy-five thousand.
[4] In the interest of brevity, we have omitted the subsequent case history of those Ohio decisions cited herein. Our research shows that none of these cases have been granted certiorari by the United States Supreme Court.
[5] Appellant also claims that the search warrant affidavit falsely stated that Jennifer Mathes had: (1) told police that her attacker was an African-American male; (2) visually identified appellant in a police line-up. However, appellant has not presented any evidence whatsoever which indicates that Mathes did not tell police that her attacker was African-American. The search warrant affidavit likewise does not state or imply in any manner that Mathes ever visually identified appellant in a police line-up. Therefore, we need not consider whether the affidavit was sufficient to establish probable cause in the absence of these statements under the rule enunciated in Franks.
[6] We express no opinion with respect to whether the statements in the affidavit which are challenged by appellant are actually false. Our duty under Franks is simply to determine whether the affidavit is sufficient to establish probable cause without the allegedly false statements.