Opinion
Appellant, Michael Burkhart, appeals from a decision of the Belmont County Probate Court denying his motion to terminate the guardianship of appellee, Emma Carpenter, over the person and the estate of his daughter, Daphanie Kinney (d.o.b. 12/7/85).
Daphanie lived with her mother, Theresa Kinney Heskett, until her mother died in April of 1998. Appellee is Daphanie's maternal grandmother. The probate court appointed appellee as Daphanie's guardian on November 10, 1998. Appellant filed a motion to terminate the guardianship pursuant to R.C. 2111.46 alleging that good cause existed to do so. Appellee then filed a motion for a protective order to prevent her from having to provide certain requested financial documents to appellant. The court held a hearing on the motions where it heard testimony from appellant and appellee, and interviewed Daphanie and her half-sister, Ashley Kinney, in chambers. The court issued the protective order but ordered appellee's counsel to file an accounting with the court of Daphanie's finances. In its judgment entry of September 9, 1999, the court held that the guardianship would continue and set out a schedule of visitation for appellant. This timely appeal followed.
Appellant raises five assignments of error, the first of which states:
 "THE PROBATE DIVISION OF THE COMMON PLEAS COURT OF BELMONT COUNTY ERRED IN FINDING AND HOLDING IN ITS JUDGMENT ENTRY OF SEPTEMBER 9, 1999, THAT IT HAS SUBJECT MATTER JURISDICTION TO HEAR AND DETERMINE THE CUSTODY OF DAPHANIE NAN KINNEY, MINOR DAUGHTER OF HER FATHER, APPELLANT MICHAEL BURKHART."
Appellant argues that the Probate Division did not have subject matter jurisdiction to grant and continue a guardianship over Daphanie.
This court already ruled on this matter in In re Kinney (June 14, 2000), Belmont App. No. 99-BA-19, unreported, 2000 WL 818919. The case involved the same parties as the case sub judice and appellant raised the same issue for our consideration. We held that the probate court did have jurisdiction to issue letters of guardianship over Daphanie's estate and person. Accordingly, this issue is res judicata and appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE PROBATE DIVISION OF THE COMMON PLEAS COURT OF BELMONT COUNTY ERRED IN ITS ORDER OF SEPTEMBER 9, 1999, GRANTING THE MOTION OF EMMA CARPENTER, GUARDIAN OF THE PERSON AND ESTATE OF DAPHANIE NAN KINNEY, A MINOR, FOR PROTECTIVE ORDER TO PREVENT THE DISCLOSURE OF THE GUARDIAN'S BANK ACCOUNT AND OTHER FINANCIAL RECORDS OF THE GUARDIAN'S ADMINISTRATION OF THE FUNDS OF THE WARD."
Appellant argues that the court erred in issuing the protective order. He asserts that appellee has failed to meet her fiduciary obligations. He claims that appellee only filed one inventory of Daphanie's assets that listed her entire assets as forty dollars. Appellant asserts that appellee had received social security benefits for Daphanie in excess of four hundred dollars per month for several months prior to filing the inventory. Appellant also alleges that appellee had refused to provide any information regarding expenditures made on Daphanie's behalf.
R.C. 2111.14 provides for the duties of a guardian of an estate. It states, in pertinent part:
 "In addition to his other duties, every guardian appointed to take care of the estate of a ward shall have the following duties:
 "(A) To make and file within three months after his appointment a full inventory of the real and personal property of the ward, its value, and the value of the yearly rent of the real property, provided that, if the guardian fails to file the inventory for thirty days after he has been notified of the expiration of the time by the probate judge, the judge shall remove him and appoint a successor;
"* * *
 "(D) To obey all orders and judgments of the courts touching the guardianship;"
Appellee filed an inventory of Daphanie's property on November 10, 1998, which disclosed that Daphanie had forty dollars in a bank account. This filing coincided with the court granting appellee letters of guardianship of Daphanie. Appellee also filed an accounting of Daphanie's finances on January 3, 2000 which included Daphanie's social security checks, a detailed listing of the money spent on Daphanie's various expenses, and the money in Daphanie's savings account. The court had ordered appellee to supply the information to it within thirty days of the hearing, which was on July 28, 1999. Five months passed before appellee provided the court with Daphanie's financial information.
R.C. 2109.31 provides the steps to follow if a fiduciary fails to file an account when ordered to do so by the probate court. It states that the court at its own instance, or on the application of an interested party or next of kin of the ward, shall issue a citation to the fiduciary as described in R.C. 2109.31(B). R.C. 2109.31(A). If the court issues a citation to the fiduciary, and the fiduciary fails to file the account by the specified date, the court may remove the fiduciary. R.C.2109.31(C)(1). In the instant case, appellant never filed an application with the court to issue a citation to appellee for failure to file an account in accordance with the court's July 28th order. Nor did the court, on its own initiative, file such a citation. Such an application would have been the proper vehicle for obtaining an account of Daphanie's finances.
Since appellee did eventually file an accounting of Daphanie's finances as the court ordered, appellant also should have received the information. Even though the court issued a protective order, it did not preclude appellant from viewing Daphanie's accounting. When the court ordered appellee to provide it with an accounting of Daphanie's money it stated that after it reviewed the information, it would provide the information to appellant. We should assume that the court followed through with its plan and that appellant now has the accounting of Daphanie's finances.
Accordingly, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE PROBATE DIVISION OF THE COMMON PLEAS COURT OF BELMONT COUNTY ERRED IN THE HEARING ON THE MOTION OF MICHAEL BURKHART, FATHER OF DAPHANIE NAN KINNEY, SEEKING AN ORDER FOR REMOVAL OF EMMA CARPENTER AS GUARDIAN OF THE PERSON AND ESTATE OF HIS DAUGHTER DAPHANIE NAN KINNEY BY RECEIVING TESTIMONY FROM WITNESS ASHLEY KINNEY AND THE `LOG' OF DAPHANIE NAN KINNEY IN CHAMBERS, DENYING MICHAEL BURKHART HIS FUNDAMENTAL DUE PROCESS RIGHT OF CROSS-EXAMINATION."
At the hearing, the court interviewed Daphanie and her half-sister, Ashley, individually in chambers without the presence of the parties or their counsel. The court also read a log that Daphanie kept before interviewing her.
Appellant argues that the court erred in interviewing Ashley in chambers and by examining Daphanie's log without providing him an opportunity to read it. He claims that the court denied him a fair hearing since he was not permitted to cross-examine Ashley and view the log.
The Fourth Appellate District has held that when determining if there is good cause to remove a guardian, the term "good cause" is broad enough to encompass the best interest of the child. In re Spriggs (Apr. 24, 1990), Scioto App. No. 89-CA-1803, unreported, 1990 WL 54871; In reZornes (Aug. 4, 1997), Lawrence App. No. 96-CA-35, unreported, 1997 WL 441854. An in chambers interview is an appropriate factor for the court to determine what is in the child's best interest. In re Whitaker
(1988), 36 Ohio St.3d 213, 217.
The Eleventh District previously dealt with a custody case where the court interviewed a child in chambers who was not the object of the custody dispute. Jacobs v. Jacobs (Sept. 21, 1990), Ashtabula App. No. 89-A-1486, unreported, 1990 WL 136611. The court reasoned that when determining the best interests of a child, courts should consider the child's interaction and interrelationship with parents, siblings, and others who affect her best interests. Id. at *3. It went on to state that the rationale behind the procedure for an in chambers interview would apply to all involved siblings regardless of whether or not they were the subject of the custody proceedings. Id. The court concluded that even if the trial court committed an error by interviewing another child in chambers, the burden was on the appellant to prove that the error was prejudicial. Id.
According to the rationale of the Jacobs court, it was within the trial court's discretion to interview Ashley in chambers since her relationship with Daphanie affected Daphanie's best interests. Also, appellant has not provided any evidence to prove that he was prejudiced by the court interviewing Ashley in chambers. The court gave no indication that Ashley's interview played a substantial role in its decision.
As for Daphanie's log, appellee presented it to the court and suggested that the court read it before interviewing Daphanie because the court might want to ask Daphanie questions about the entries in her log. The court indicated that it would review the log before interviewing Daphanie. Appellant's counsel requested that appellant be permitted to view the log. The court stated that it would examine the log first and that if it contained information that could be revealed, it would do so. Neither party mentioned the log again until the present appeal.
There is no indication that the court relied on any information in the log in making its decision. The court did not even mention the log in its judgment entry. Moreover, appellant did not provide this court with a transcript of the trial court's in chambers interview with Daphanie. Accordingly, we have no way to determine whether the log played a part in the court's interview of Daphanie.
Thus, appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "THE PROBATE DIVISION OF THE COMMON PLEAS COURT OF BELMONT COUNTY ERRED IN THE HEARING ON THE MOTION OF MICHAEL BURKHART, FATHER OF DAPHANIE NAN KINNEY, SEEKING AN ORDER FOR THE REMOVAL OF EMMA CARPENTER AS GUARDIAN OF THE PERSON AND ESTATE OF HIS DAUGHTER DAPHANIE NAN KINNEY BY PERMITTING ASHLEY KINNEY TO SERVE AS AMERICAN SIGN LANGUAGE INTERPRETER FOR HER GRANDMOTHER, GUARDIAN EMMA CARPENTER."
Appellee is deaf and mute. She communicates by American Sign Language. At the hearing, the court permitted appellee's granddaughter and Daphanie's half-sister, Ashley, to translate for appellee when she testified. Prior to permitting Ashley to serve as her grandmother's interpreter, the court and counsel questioned Ashley regarding her qualifications. Appellant objected to Ashley serving as appellee's interpreter.
Appellant argues that the court erred in permitting Ashley to serve as appellee's interpreter. He argues that a translator must be an impartial expert. Appellant asserts that Ashley was not impartial because she had a personal interest in the outcome of the hearing.
R.C. 2311.14 governs the use of interpreters in court. It states, in pertinent part:
 "(A) Whenever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person."
 "(B) Before entering upon his duties, the interpreter shall take an oath that he will make a true interpretation of the proceedings to the party or witness, and that he will truly repeat the statements made by such party or witness to the court, to the best of his ability."
Evid.R. 604 also addresses interpreters. It states, "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." Evid.R. 604. Commentary to Evid.R. 604 specifically states, "[c]lose relatives or friends of the witness are not precluded from serving as interpreters where such individuals qualify as experts."[1] To testify as an expert, a witness must be qualified by specialized knowledge, skill, experience, training, or education. Evid.R. 702(B).
The court properly required appellee to qualify Ashley as an expert before allowing her to translate. Ashley testified that she learned to sign when she learned to speak. Ashley's mother and her grandmother both taught her to sign. She testified that her training has been ongoing since age two or three. She testified that she also has uncles who are deaf with whom she communicates. Ashley testified that she frequently interprets for appellee in the course of daily life. She testified that she felt she would be able to communicate with appellee better than someone who did not know her. Ashley also stated that she communicates well with other deaf individuals who are not family members.
Ashley testified that she would interpret appellee's exact communications and keep her own feelings separate. The court also required Ashley to take an oath to give correct interpretations of appellee's signs.
The trial court has the discretion to determine whether a witness qualifies as an expert, and its rulings on such matters will not be reversed absent an abuse of that discretion. Vinci v. Ceraolo (1992),79 Ohio App.3d 640, 646. Appellee properly demonstrated through Ashley's testimony that she qualified as an expert. Ample facts exist on the record to demonstrate that the trial court did not abuse its discretion in allowing Ashley to serve as an interpreter.
Accordingly, appellant's fourth assignment of error lacks merit.
Appellant's fifth and final assignment of error states:
 "THE PROBATE DIVISION OF THE COMMON PLEAS COURT OF BELMONT COUNTY ERRED IN FINDING THAT IT WAS IN THE `BEST INTERESTS' OF WARD DAPHANIE NAN KINNEY, A MINOR, THAT EMMA CARPENTER NOT BE REMOVED AS GUARDIAN OF THE PERSON AND ESTATE OF THE WARD WHERE, AS HERE, THE RECORD CONFIRMS THAT THE SAID GUARDIAN FAILED TO PROVIDE ANY INFORMATION TO THE COURT ABOUT THE GUARDIAN'S ADMINISTRATION OF THE WARD'S FUNDS, FAILED TO PROVIDE SUITABLE SUPERVISION OF THE WARD, FAILED TO PROVIDE ADEQUATE VISITATION BY THE WARD'S FATHER WITH THE WARD, WAS UNABLE TO PROVIDE FOR THE WARD'S BASIC NEEDS, WAS DETERMINED BY THE INVESTIGATOR APPOINTED BY THE COURT TO BE LESS SUITABLE CUSTODIAN [sic.] THAN THE WARD'S FATHER, AND WAS DETERMINED BY THE COURT TO BE LESS SUITABLE CUSTODIAN [sic.] THAN THE WARD'S FATHER."
Appellant maintains that appellee has failed in her duties as guardian. Appellant argues that appellee failed to file an inventory of Daphanie's assets with the court according to its order. He alleges that this failure constitutes a neglect of appellee's duty as Daphanie's guardian. Appellant also argues that appellee has failed in her duties by refusing to enroll Daphanie in counseling as was recommended by the court and an investigator. Next, appellant asserts that appellee refuses to cooperate with regard to Daphanie's visitation with appellant.
Furthermore, appellant claims that appellee does not properly supervise Daphanie. As evidence of this alleged lack of supervision, appellant points to an incident where Ashley ran away to Florida and appellee did not report her missing for one or two days. He also asserts that appellee does not encourage Daphanie to participate in extracurricular activities nor is she able to assist Daphanie with her schoolwork or provide transportation for her. Appellant asserts that he is able to provide all of these things for Daphanie.
The removal of a guardian is governed by R.C. 2111.46. It provides in part, "[w]hen a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless such ward selects another suitable guardian." R.C. 2111.46. The statute does not define what constitutes "good cause." Other appellate courts have held that whether good cause exists for the removal of a guardian is within the sound discretion of the trial court. In reGuardianship of Joles (June 30, 2000), Lake App. No. 99-L-87, unreported, 2000 WL 895586; Zornes, supra; In re Henry (June 2, 1983), Cuyahoga App. No. 45601, unreported, 1983 WL 3065. Also, good cause has been held to encompass the child's best interests. Spriggs, supra.
Appellant alleges multiple failures on appellee's part to be a competent guardian; however, most of his allegations have been resolved. The court's judgment entry of September 9, 1999 remedied several of appellant's complaints. It ordered that Daphanie and appellant enter counseling, set out a visitation schedule for appellant, and set out a schedule for Daphanie to visit appellant for the purpose of schoolwork.
Appellant also alleged that appellee did not encourage Daphanie to participate in any activities, although the evidence indicated that appellee encouraged Daphanie to take part in 4-H activities including raising rabbits and chickens. Appellant further claimed that appellee could not provide transportation for Daphanie. However, appellee's testimony revealed that her relatives live next door and provide transportation for her. As to appellant's claim that appellee never filed an accounting of Daphanie's finances, appellee did file an accounting with the court of the finances on January 3, 2000.
Given these facts and the fact that Daphanie wanted to remain with her grandmother, it cannot be said that the trial court abused its discretion in refusing to remove appellee as Daphanie's guardian. Accordingly, appellant's final assignment of error is without merit.
Therefore, the decision of the trial court is hereby affirmed.
 ____________ DONOFRIO, J.
Vukovich, J., concurs.
Waite, J., concurs.
[1] Quoting from, Weissenberger's Ohio Evidence, 1999 Courtroom Manual, Anderson's Ohio Practice Manual Series.