[Cite as *Theodorou Real Estate Ventures, L.L.C. v. Rogers*, 2012-Ohio-4282.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97883

---

# THEODOROU REAL ESTATE VENTURES, L.L.C.

### PLAINTIFF-APPELLANT

vs.

# JACQUELINE ROGERS

### DEFENDANT-APPELLEE

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Rocky River Municipal Court
Case No. 11 CVI 1945

**BEFORE:**    Sweeney, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**    September 20, 2012

**ATTORNEY FOR APPELLANT**

Joseph T. Burke, Esq.
Polito, Paulozzi, Rodstrom & Burke
21300 Lorain Road
Fairview Park, Ohio 44126

**ATTORNEYS FOR APPELLEE**

James Pasch, Esq.
Joe Medici, Esq.
Milano, Weiser, Pasch & Medici
2639 Wooster Road
Rocky River, Ohio 44116

JAMES J. SWEENEY, P.J.:

**{¶1}** Plaintiff-appellant Theodorou Real Estate Ventures, L.L.C. ("plaintiff") appeals the amount of damages it was awarded by the Rocky River Municipal Court in this small claims case between neighbors concerning who should pay for the removal of a tree. After reviewing the facts of the case and pertinent law, we affirm.

**{¶2}** Plaintiff is an Ohio corporation owned by Chris and Kristine Theodorou. Plaintiff owns property at 20921 Westwood Drive in Fairview Park, and defendant-appellee Jacqueline Rogers owns adjacent property at 4239 W. 210th Street. On April 17, 2011, contractors were working on plaintiff's property when they heard a crack and noticed that a 60' tree near plaintiff's and Rogers property line was damaged. Kristine called the City of Fairview Park Building Department, and arborist James Mott was sent to view the tree.

**{¶3}** Upon inspection, Mott determined that the tree was "structurally impaired" and "it probably should be removed." However, Mott was unable to determine on whose property the tree was situated.

**{¶4}** Mott walked over to Rogers' house and told her that the tree "appeared to be in bad shape" and that she "should look into doing something about taking care of that." Mott determined that the safest thing to do was have the tree removed, but in the alternative, "it could have been just topped off * * * from where the trunk came up to the branch." Rogers told Mott that she was unsure if it was her tree.

**{¶5}** Mott told Kristine "to contact either a lawyer and/or insurance company. [O]r to take action on their own by either talking to the neighbor and asking for assistance in having it removed, and/or just taking it upon themselves to do what they needed to do to protect their property."

**{¶6}** On April 21, 2011, plaintiff obtained an estimate for $1400 to remove the tree. Kristine communicated this information to Rogers' daughter, who said that she did not think the tree was on her mother's property, and that she knew someone who could trim it for $300-$350. Kristine told Rogers' daughter that the tree was going to be taken down the next day.

**{¶7}** On April 22, 2011, without knowing on whose property the tree was located, Kristine had it removed by Wilson Tree Service for $1508.50. A copy of the invoice was mailed to Rogers, however, she never responded. On September 7, 2011, plaintiff filed a negligence complaint against Rogers in small claims court. In November 2011, plaintiff hired a land surveyor, who determined that the tree stump in question "straddles the common property line, with about one-half lying on each side of the line." The cost of this survey was $950.

**{¶8}** The case went to trial in December 2011. The court awarded judgment to plaintiff for $175.

**{¶9}** Plaintiff appeals and raises one assignment of error for our review.

I.

The trial court erred and abused its discretion because its judgment was against the manifest weight of the evidence and not supported by competent credible evidence.

{¶10} Specifically, plaintiff argues that the court erred when it awarded $175 in damages, because the evidence demonstrated that plaintiff was entitled to $754.25, which represents one-half of the cost of the tree removal, plus $950 for the land survey.

{¶11} "We will not disturb a decision of the trial court as to a determination of damages absent an abuse of discretion." *Roberts v. United States Fid. & Guar. Co.,* 75 Ohio St.3d 630, 634, 665 N.E.2d 664 (1996). An abuse of discretion is "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶12} Pursuant to Evid.R. 101(C)(8), the Ohio Rules of Evidence do not apply in small claims cases. The court made this clear to the parties before trial:

> Let me, for your benefit, explain the Rules of Civil Procedure and the Rules of Evidence do not necessarily apply if they are inconsistent with the goals of Small Claims. That means a Small Claims case is generally run in a different fashion tha[n] a traditional trial. If you wanted something other than that, you should file someplace other than Small Claims.

{¶13} In the instant case, Rogers testified at trial that when Mott came to her door on April 17, 2011, she told him that she was unsure if it was her tree and she would have to get a survey to find out. Mott replied that he would call her in a week or two to follow up. Rogers, who represented herself pro se, did not substantively cross-examine Mott, and their conversation was uncorroborated from his standpoint. However, Rogers' daughter testified that she heard her mother's conversation with Mott, and he said, "I will

check back with you in a week or two."   She further recalled Mott saying if nothing had been done about the tree within a week or two, he would send a "nasty letter," which was something he did not like to do.

{¶14}   Rogers' daughter also corroborated the conversations her mother had with Wilson Tree Service and Kristine, in which her mother refused to pay for removing the tree until a survey was done to determine who was responsible for all or part of the payment.   Rogers' daughter testified that only a few days elapsed from their initial contact with Mott until the tree was removed on Good Friday.   It was her mother's intention to have a survey done, and they had an estimate to have the tree "topped off" for $300-$350, but they were never given the chance to act before the tree was removed. According to defendant's daughter, her co-worker's fiancé worked for a tree removal company in Lorain County, and he was willing to do the work as a side job the following weekend.

{¶15}   Although unnecessary in small claims court, plaintiff's attorney did not object to defendant's evidence regarding damages.   Indeed, Kristine's testimony was consistent with defendant's version of the events.   According to Kristine, defendant and her daughter "spoke to a friend who was going to come out in about two weeks with a rope and a ladder to take the tree down and it was going to cost them $300."

{¶16}   During Kristine's testimony, she was asked the following question: "* * * as you left it with * * * Rogers' daughter then, she made it clear that she believed that the

tree was not on their property and that it was your responsibility, correct?" Kristine replied yes to this question.

{¶17} On April 21, 2011, Wilson Tree Service came to Rogers' house and asked her if she would pay half of the tree removal. Rogers said no, because she did not get the land survey yet. The next day, Wilson Tree Service cut the tree down.

{¶18} We find no evidence that this damaged tree was an emergency situation. As the court noted on the record, "[t]here was no evidence that the crack showed up that day." Rogers' daughter testified as follows:

> Mott didn't say it had to be done immediately. He said that tree is damaged or broken or cracked or whatever, and he said it needs to be taken down. He said you could have somebody top it so that it doesn't like fall or, you know, to where the crack was or something. He didn't say to either [me or my mother] it had to be done immediately.

{¶19} Turning to the land survey, which plaintiff obtained after the tree was removed and the complaint was filed, we find that this cost was incurred as part of the litigation. The court stated on the record that plaintiff "had to hire an expert to prove [its] case * * * [and] [y]ou don't recover the cost of the expert in proving the case." Often referred to as the "American rule," it is long standing law that, in general, "the costs and expenses of litigation, other than the usual court costs, are not recoverable in actions for damages, and ordinarily no attorney fees are allowed." *Vinci v. Ceraolo*, 79 Ohio App.3d 640, 649, 607 N.E.2d 1079 (8th Dist. 1992) (citations omitted).

{¶20} Upon review, we find no abuse of discretion in the court's judgment and plaintiff's assignment of error is overruled.

**{¶21}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

———————

JAMES J. SWEENEY, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (SEE ATTACHED DISSENTING OPINION
SEAN C. GALLAGHER, J., DISSENTING:

**{¶22}** I respectfully dissent. I would remand the case and have the trial court split the cost of the tree removal and the cost of the land survey on a 50-50 basis.

**{¶23}** The uncontroverted testimony of Fairview Park city arborist James Mott established the tree was structurally impaired and needed to be removed.

**{¶24}** The majority opinion is based largely on Jacqueline Rogers's and her daughter Meghan Owen's self-serving recollections of Mott's findings and Owen's statements about the hearsay representations of an unidentified tree remover known only as "the secretary's fiancé."

**{¶25}** The assertions by Rogers and Owens that Mott implied they had "a week or two" to act does not mean the tree was not in danger of falling during that time period.

Rather, Mott was responding to Rogers's assertion that she did not believe it was her tree and Mott would be back "in a week or two" to make certain the matter was resolved.

**{¶26}** Mott's own testimony established the need for immediate action.

> [T]here was a split from the crotch of the tree, which is where the tree comes out from the trunk and branches out, vertically down through the trunk.
>
> * * *
>
> because the structure of the tree was being compromised because the way the split was coming down the main trunk itself, not just off a limb or something that might fall off, so it appeared to me something needed to be done.

**{¶27}** The evidence established the tree was a 60-foot-tall elm that was situated approximately 10 feet from the appellant's residence. The evidence also established that the appellant invested approximately $100,000 in renovations to the home over the preceding 18 months.

**{¶28}** First, Rogers claimed the tree was not on her property. She then claimed she wanted a survey. Finally, she claimed if it was her responsibility, she would only have it trimmed. Rogers received notice on three separate occasions from three separate sources about the condition and location of the tree and the need to have it removed. Appellant waited from April 17, 2011 to April 22, 2011, before the tree was removed.

**{¶29}** The risk of personal injury or property damage existed throughout this period. The actions of appellant in removing the tree was reasonable in light of all the facts and circumstances in existence at the time. To hold otherwise would make the appellant a prisoner of the inaction of the appellee. Therefore, I dissent.